## Gordon v. City Banking Company

*Stanton & Stanton,* for petitioner; *P. J. Clyde Randall,* contra.

ELDER W. MARSHALL, J., April 21, 1932.—This is an application by the special deputy secretary of banking in charge of the business and property of the

Steel City Banking Company (herein referred to as the bank) for leave to release the shareholders of that company from whatever liability was imposed upon them by virtue of the filing and recording of the secretary's certificate of having taken possession. After notice of the application had been given to all depositors, by mail and by advertisement, six of them made answer, wherein they opposed the prayer of the petition. The matter is now before the court on petition and answer, supplemented by the reports of the respective counsel as to the amount and status of real estate owned by certain of the shareholders.

From the undenied allegations of the petition it appears that in 1926 the Secretary of Banking took possession of the banking company, an unincorporated association of some 650 shareholders, and at once filed in the offices of the prothonotary and recorder of deeds a certificate of possession wherein were named all of the stockholders. Shortly thereafter, he ascertained and reported that the total liabilities of the bank were $250,030.72. All assets of the bank have now been converted into cash, the net amount realized being $99,553.82, of which $87,461.10 have been paid to those of the depositors who were not shareholders, and $12,092.72 remain undistributed. The court has heretofore decreed that all deposits of money belonging to shareholders be set off against the liability of such shareholders, and has debarred the latter from participating in distribution of the bank's assets.

It is averred in the petition that while some of the 650 shareholders are believed to be the owners of real estate, the cost of searching the records to determine property holdings and encumbrances and of instituting suits to enforce liability will deplete or exhaust the funds now on hand, with no assurance of ultimate benefit to the estate. Accordingly, in the interest of the depositors, it is proposed to release the lien of the recorded certificate, and to close the estate by final distribution of the money on hand.

Respondents' answer contains many statements of legal conclusions, and few averments of fact. It does, however, set forth the names of some 18 shareholders, with a copy of the 1931 assessment of real estate in the name of each, as made by the Board for the Assessment and Revision of Taxes of Allegheny County. No distinct allegation of ownership is made nor is information given as to what, if any, encumbrances are on the various properties. At the argument of the case, we were disposed to overlook all deficiencies in pleading, but we did require counsel to investigate and inform the court concerning the status of the properties mentioned. Counsel for respondents subsequently reported that properties assessed to the following shareholders for the sums mentioned were clear of encumbrances:

| Shareholder | Assessed valuation |
|---|---|
| Inez and Mary Austin | $3,200 |
| Junius C. Austin | 3,470 |
| J. H. Johnston | 2,700 |
| Eliza M. King | 2,300 |
| Charles E. Anderson | 1,550 |
| Mary Toy | 2,100 |

Upon investigation by opposing counsel, it was reported, and respondents did not controvert, that the property first mentioned is subject to unpaid taxes for four years, totaling upwards of $450; that the property next mentioned is charged with a host of tax liens, aggregating almost $2,000; that the properties assessed to Eliza M. King and Mary Toy were found to be unencumbered and fairly worth $4,000 and $2,500, respectively. Of the remaining 12 assessments, many titles appear to be held by entireties, with but one of the spouses a shareholder; in other cases the assessment indicates the shareholder is now deceased; in still others, the property consists of unimproved lots. There is no denial of

the allegation of the petition that all of the shareholders are negroes. From our examination of the transcripts of assessment, the properties listed appear to be situate in a section of the city inhabited chiefly by negroes.

The theory of the respondents is that the shareholders are liable as partners for all claims against the bank, including claims of depositors; that a property search should be made against each shareholder, and suit entered and prosecuted to judgment and execution against such as own real estate; and that the fund on hand should be employed to bear the expense of so doing. In a word, it is proposed that instead of releasing the shareholders from liability and making a present distribution, every resource should be exhausted to determine which of the shareholders are solvent, and to strip those who are from their every asset. If there were grounds for believing that by pursuing such course the balance for distribution would be materially increased within a reasonable time, we would order it forthwith. We are satisfied, however, that such procedure, if followed, must result inevitably in the frittering away of the present cash balance, with no assurance of any compensating benefits to depositors.

The cost of determining, by an examination of the records, the extent and status of the real estate holdings of each of 650 shareholders would be prohibitive. It would probably amount to $20 in each instance, or a total of $13,000, which is more than the cash balance on hand. If the search revealed property of any consequence, it would be necessary to proceed to sheriff's sale, and under the requirements of our sheriff to deposit $75 with him as security for the cost of advertisement. In view of the present condition of the real estate market, it is altogether likely that in the majority of instances the execution creditor would be obliged to bid in the property for taxes and costs, with little prospect that a profitable resale could be had within any reasonable period.

We conceive the result of the whole operation would be to exchange the cash on hand for various small pieces of real estate, many of them encumbered and all now owned by negroes. As there is at present a very limited market for property of this character, the Secretary of Banking would perforce be thrust into the real estate business for a number of years to come. Winding up of the bank's affairs would be thus unduly protracted, and final distribution to depositors indefinitely delayed. Moreover, in view of the heavy cash outlay required in the first instance, we are certain that after the whole program had been concluded, the cash then available to creditors would be considerably less than the amount now on hand.

Our conclusion is that the interests of all concerned will best be served if the claims against shareholders be presently released, in order to permit immediate payment to depositors of the $12,000 cash balance on hand. We may add that, as in the past, stockholders who are also depositors will not be allowed to share in distribution. To this extent at least they will have helped to increase the total amount recoverable by the remaining depositors.

### Order

And now, to wit, April 21, 1932, upon consideration of the above case, it is ordered and decreed as follows:

1. That the Secretary of Banking be authorized to execute and file of record at the above number and term a proper release of each and every of the parties named in his certificate of taking possession from any and all liability that may have been imposed upon said parties or may have accrued to the Secretary of Banking by reason of the filing of such certificate.

2. That the Secretary of Banking record in the office of the Recorder of Deeds of Allegheny County, Pa., a similar release, and cause notation thereof to be entered on the margin of the record in deed book vol. 2298, page 58.

From William J. Aiken, Pittsburgh, Pa.